**MAYER BROWN LLP**
Dale J. Giali (Bar No. 150382)
  dgiali@mayerbrown.com
350 South Grand Ave., 25th Floor
Los Angeles, California 90071
Tel: (213) 229-9500
Fax: (213) 625-0248

A. John P. Mancini*
  jmancini@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 506-2295
Fax: (212) 849-5895
*Pro hac vice to be filed

Attorneys for Plaintiff
NESTLÉ USA, INC.

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NESTLÉ USA, INC.,** | Case No. 2:15-cv-06527 |
| Plaintiff, | Hon. |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **PERVINE FOODS, LLC,** | |
| Defendant. | |

Nestlé USA, Inc. ("Nestlé"), by and through its attorneys, Mayer Brown LLP, as and for its complaint against Pervine Foods, LLC ("Pervine"), alleges as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1.     This is an action for trade dress and trademark infringement, dilution, false designation of origin, deceptive acts and practices, and unfair competition arising out of Pervine's nationwide sale of chocolate nutrition bars in packages nearly identical to Nestlé's CRUNCH packages.

2.     Nestlé has spent more than half a century and many millions of dollars building the CRUNCH brand, which has since become one of America's most familiar and trusted brands.  Nestlé's iconic CRUNCH packages, designed with the distinctive CRUNCH trademarks and trade dress, represent a single source of chocolate bars with a distinctive texture and crunch.

3.     With full knowledge of Nestlé's trademarks and trade dress, Pervine sells its chocolate nutrition bars in packaging using the trademark FIT CRUNCH, which incorporates Nestlé's iconic mark CRUNCH.  Moreover, in an effort to trade upon Nestlé's hard-earned goodwill, some of the packaging sold by Pervine bear visual elements that are confusingly similar to the distinctive visual properties adopted by Nestlé for its CRUNCH trade dress. This includes red font for the mark CRUNCH and the color combination red, white and blue, with blue as the dominant color.

4.     Pervine's unlawful conduct is causing and will continue to cause irreparable harm to Nestlé.  Pervine's use of remarkably similar packaging in combination with the confusingly similar trademark FIT CRUNCH, which incorporates Nestlé's trademark CRUNCH in connection with the sale of the *same goods*, to the *same consumers*, in the *same stores* will inevitably cause consumer confusion as to the source of the Pervine products or as to a perceived

1

affiliation, association or sponsorship between Nestlé and Pervine that does not exist.

5.     Pervine's use of nearly identical packaging and trademarks is also likely to cause dilution by blurring of, and does, in fact, dilute and detract from the distinctiveness of Nestlé's CRUNCH trademarks and trade dress.

## THE PARTIES

6.     Nestlé USA, Inc., exclusive licensee of Société des Produits Nestlé S.A. in the United States, is organized and exists under the laws of the State of Delaware with its principal place of business located at 800 North Brand Blvd., Glendale, California 91203.

7.     Upon information and belief, Pervine Foods, LLC is a Pennsylvania limited liability company with its principal place of business at 111 Terence Drive, Pittsburgh, Pennsylvania 15236.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

9.     This Court has personal jurisdiction over Pervine because the activity complained of herein is aimed at the State of California and Pervine is conducting business in this District.  Among other things, Pervine transacts business in this State, contracts to supply goods in this State, caused tortious injury by an act or omission in this State, caused tortious injury in this State by an act or omission outside this State, regularly does or solicits business or engages in a persistent course of conduct in this State, and/or caused tortious injury in this State by an act outside this State committed with the purpose of injuring persons when it might have reasonably expected to cause injury in this State.  Further, Pervine's unlawful conduct was intentional, was intentionally

directed to cause harm to Nestlé, and has caused harm to Nestlé in California.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to this action occurred in this District.

### FACTS

*Nestlé's CRUNCH Trademarks and Trade Dress*

11.    The rich history of Nestlé's CRUNCH brand dates back to the 1930s, when Nestlé chocolate makers experimented with their already popular Nestlé Milk Chocolate bar by adding crisped rice. Today, CRUNCH branded products are sold by Nestlé  in over 50 countries worldwide.  Since Nestlé's first use of the mark in commerce, Nestlé's CRUNCH trademark and trade dress have become preeminent in the food industry, especially with regard to chocolate bars, ice creams and frozen desserts. The CRUNCH mark is so iconic that the company has responded to consumers' love of the brand by creating memorabilia including t-shirts, model cars, plush pillows, embossed tins, cell phone covers, headphones, and socks featuring the famous CRUNCH trademark and trade dress.

12.    In addition to Nestlé's common law rights in and to the CRUNCH trademark and trade dress ( CRUNCH ), Nestlé's famous trademarks in the CRUNCH name and design are the subject of numerous incontestable federal and foreign registrations, including U.S. Reg. No. 0630563 (1956) ( NESTLÉs CRUNCH  in class 30 for milk chocolate with first use in commerce date of November 1937) and U.S. Reg. No. 1110632 (1979) ( Nestlé CRUNCH  in class 30 for chocolate coated ice cream bars with first use in commerce date of June 1977) (collectively the "NESTLÉ CRUNCH Trademarks").  (Copies of the U.S. trademark registration certificates for the NESTLÉ CRUNCH Trademarks are attached hereto as **Exhibit A-1** and a full list of Nestlé's worldwide holdings for

its CRUNCH trademark and related trade dress portfolio is attached hereto as **Exhibit A-2**.  By reference, these exhibits are made a part hereof.)

13.    Since the 1930s, when Nestlé's first CRUNCH chocolate bars were introduced, Nestlé's CRUNCH trademark has expanded to be used in connection with a wide variety of chocolate products, including fun-sized, miniature-sized, and bite-sized versions of the original, as well as ice cream and wafer variations of the iconic bar.  (These products are collectively displayed on Nestlé's          CRUNCH          product          page          located          at http://www.nestlecrunch.com/products.aspx, a copy of which is attached hereto as **Exhibit B-1**; an enlarged example of Nestlé's original CRUNCH bar is attached as **Exhibit B-2**.  By reference these exhibits are made a part hereof.)  In addition to its marketing of chocolate bars, chocolate confections, ice cream, and frozen confections under the CRUNCH brand, Nestlé also has many co-branded CRUNCH products, including Yo-Crunch yogurt, Lunchables, and other baked goods featuring Nestlé's CRUNCH products.  (See depictions at **Exhibits B-3, B-4**, **B-5,** and **B-6**, which are attached to and made a part hereof.)

14.    The CRUNCH logo, which includes the CRUNCH word mark in all red capital letters set within a white rectangle with accent marks cutting into a solid blue background, appears on every Nestlé's CRUNCH bar and represents the quality of Nestlé's CRUNCH brand.

15.    In addition to bearing the CRUNCH Trademark and logo, all of Nestlé's CRUNCH products are immediately recognized by their distinctive trade dress.  Nestlé's CRUNCH trade dress in the packaging of its iconic chocolate bars consists of several key elements:  (i) the use of blue as the single dominant background color; (ii) the use of red for the word CRUNCH (iii) the appearance of the text on a white background; (iv) the predominance of the word "CRUNCH"; and (v) the accent marks surrounding the word "CRUNCH".

These key elements collectively comprise Nestlé's CRUNCH Trade Dress (the "Nestlé's CRUNCH Trade Dress"). (*See* Exhibits B1 and B2.)

16.    Nestlé's CRUNCH Trademark and the key elements of the Nestlé's CRUNCH Trade Dress are non-functional.   Neither the Nestlé's CRUNCH Trademark nor any individual trade dress element is essential to the use or purpose of packaging or selling chocolate bars, and Nestlé's exclusive use of these combined elements does not put Pervine or any other competitor at a non-reputation-related disadvantage.

17.    Additionally, Nestlé's CRUNCH Trademark and the key elements of the Nestlé's CRUNCH Trade Dress are inherently distinctive and have been indicators of Nestlé's quality since their adoption.  When viewed in conjunction (as they are on Nestlé's CRUNCH packages), the distinctiveness of Nestlé's CRUNCH Trademark and key elements of Nestlé's CRUNCH Trade Dress is only reinforced.

18.    Nestlé's CRUNCH Trademark and Trade Dress have also acquired a high degree of distinctiveness and fame in the minds of consumers through consistent use, widespread and substantial advertising and promotion, and tremendous commercial success, both nationally and internationally. A sampling of international decisions acknowledging the fame of Nestlé's CRUNCH trademark is attached hereto as **Exhibits C-1** and **C-2**. Consumers everywhere recognize the Nestlé's CRUNCH Trademark and Trade Dress as representative of high quality Nestlé products.

19.    Since the Nestlé's CRUNCH name and design were first used, Nestlé has spent many millions of dollars building its CRUNCH brand and cultivating the goodwill associated with the brand, such that it is now one of America's most familiar and trusted brands.

20.    Nestlé's CRUNCH brand and products appear in print materials, in

COMPLAINT AND DEMAND FOR JURY TRIAL

commercials, in stores, and in digital media.

21.    Nestlé markets and advertises its CRUNCH bars directly to consumers on the Internet via Nestlé's websites, including the Nestlé USA website located at http://www.nestleusa.com/brands/chocolate (last visited August 6, 2015) and the CRUNCH brand website, http://www.nestlecrunch.com/ (last visited August 6, 2015).

22.    Nestlé's CRUNCH products are also marketed through social media avenues such as Facebook (*see* https://www.facebook.com/nestlecrunch (last visited August 6, 2015))  and on the company's recipe website, Meals.com (*see* http://www.meals.com/search-results/?filter=nestle-crunch (last visited August 6, 2015)), and blog, Nestlé Kitchens (*see* https://nestleusa.wordpress.com/ (last visited August 6, 2015)).

23.    Nestlé products bearing Nestlé's CRUNCH Trademark and Trade Dress are distributed nationwide and are sold to the general public through retailers including Target, Wal-Mart, Amazon, Walgreens, ShopRite, and others.

24.    Nestlé has sold hundreds of millions of packages of chocolate bars and other chocolate products featuring Nestlé's CRUNCH Trademark and Trade Dress.

25.    In the minds of consumers, Nestlé's CRUNCH Trademark and Trade Dress represent a single source of high quality chocolate and chocolate bars.  As a result of its efforts and commercial success, Nestlé has developed substantial and valuable goodwill in its CRUNCH brand.

***Pervine's Infringing Trademarks and Trade Dress***

26.    Upon information and belief, Pervine is a Pennsylvania-based company that manufactures and sells nutrition bars containing chocolate.

27.    On or about June 2014, Nestlé became aware that Pervine was selling its FIT CRUNCH bars in packaging that displays the word "CRUNCH"

6

as the predominant feature, with the wording appearing in bold red font and capital letters on a white background, in nearly identical fashion to Nestlé's presentation of its CRUNCH Trademark.  In addition, the "Cookies and Cream" variety of the FIT CRUNCH bar featured a blue background that was substantially similar to the overall look and feel of Nestlé's famous CRUNCH packaging and trade dress.

28.    Pervine's trademarks, which include the FIT CRUNCH word mark (Reg. No.  4501292) and a logo containing a stylized version of the FIT CRUNCH word mark (Reg. No. 4501294) (the "Infringing Marks"), are remarkably similar to Nestlé's CRUNCH Trademark and are especially likely to cause consumer confusion when viewed as a part of the nearly identical packaging.

29.    The FIT CRUNCH logo, as depicted at http://fitcrunchbars.com/ (attached as **Exhibit D** and by reference made a part hereof) is strikingly similar to Nestlé's CRUNCH Trademark.  Both make predominant use of the word "CRUNCH", which is identical when seen in print or spoken aloud; (ii) the word "CRUNCH" is displayed in capital letters and in primarily red font in both presentations; and (iii) both feature accent marks surrounding the word "CRUNCH".  The FIT CRUNCH presentation conjures the thought of enjoying a protein and vitamin fortified or "fit" version of Nestlé's iconic CRUNCH bar in the minds of consumers.

30.    As noted above, the Infringing Marks are so similar in sight, sound, and meaning to Nestlé's CRUNCH Trademark that they are likely to cause significant consumer confusion.

31.    The likelihood of confusion is even more extreme when the Infringing Marks are viewed in conjunction with the key trade dress elements of Nestlé's relevant CRUNCH packages (the "Infringing Trade Dress")

(collectively, the "Infringing Marks and Trade Dress"). In fact, Pervine appears to have outright copied every key element of Nestlé's CRUNCH Trade Dress, including: (i) the use of blue as the single dominant background color for at least one of its varieties; (ii) the use of red for the word CRUNCH; (iii) the appearance of the text on a white background; (iv) the predominance of the word "CRUNCH"; and (v) the accent marks surrounding the word "CRUNCH". (An example of Pervine's packaging for the "Cookies and Cream" variety as found at Amazon.com is attached as **Exhibit E-1;** an example of Pervine's packaging for the "Chocolate Chip Cookie Dough" variety as found at Amazon.com is attached as **Exhibit E-2;** and an example of Pervine's packaging for the "Peanut Butter" variety as found at Amazon.com is attached as **Exhibit E-3**. By reference these exhibits are made a part hereof.)

***Pervine's Bad Faith***

32. The fame of Nestlé's CRUNCH Trademark and Trade Dress and the striking resemblance of all aspects of the Infringing Marks and Trade Dress to those of Nestlé's CRUNCH strongly evidence Pervine's bad faith.

33. Pervine did not introduce its products into the marketplace until after Nestlé's CRUNCH Trademark and Trade Dress had achieved an extremely high degree of recognition among American consumers and after Nestlé had obtained federal registrations for its NESTLÉ CRUNCH Trademarks.

34. The striking similarity of all aspects of the Infringing Marks and packages cannot be a coincidence.

35. A press release for the FIT CRUNCH product dated September 25, 2013 boasts that "each bar has a candy bar crunch with a soft cookie center." (*See* http://www.marketwatch.com/story/celebrity-chef-robert-irvine-collaborates-with-fortifx-to-unveil-signature-line-of-worlds-only-six-layer-baked-protein-bars-called-fit-crunchtm-2013-09-25 (last visited August 6,

2015)). Furthermore, upon information and belief, Pervine's VP of Sales has said that the bars are "better than a Snickers," but contain less sugar.

36. Although the Infringing Marks are registered in Class 5 for "[h]igh-protein nutritional supplements formed and packaged as bars," Pervine's products consist of bars containing chocolate and the company has made a deliberate attempt to liken them to candy bars.

### The Likelihood of Confusion, Likelihood of Dilution, and Irreparable Harm to Nestlé

37. The striking similarities between the Infringing Marks and Trade Dress and Nestlé's CRUNCH Trademark and Trade Dress make it likely that Pervine's bars will be mistaken for Nestlé's CRUNCH bars, or a low calorie or healthier version of the same.

38. The fact that Pervine's bars bearing the Infringing Marks and Trade Dress are being sold in the very same stores that have sold Nestlé's CRUNCH bars for years makes consumer confusion inevitable. (A screen shot showing that one of Pervine's FIT CRUNCH products appears in the top ten search results for "CRUNCH BAR" on Amazon.com alongside five of Nestlé's authentic CRUNCH products is attached as **Exhibit F** and by reference made a part hereof.)

39. Chocolate bars are a low-cost food item. Customers have grown accustomed to grabbing a package with Nestlé's CRUNCH Trade Dress from the shelves of the stores they frequent and consistently ending up with the Nestlé quality they expect.

40. The FIT CRUNCH bars deliver a much different consumer experience than that which consumers of Nestlé's CRUNCH bars have come to expect. As a nutritional supplement, FIT CRUNCH detracts from the indulgent and enduring taste of pure milk chocolate combined with crisped rice for which Nestlé is famous.

9

41.     Pervine's use of the Infringing Marks and Trade Dress in commerce to advertise, promote, market and sell its directly competing chocolate bars is likely to, and does in fact, dilute, blur and detract from the distinctiveness of Nestlé's famous CRUNCH Trademarks and Trade Dress.  As explained above, Pervine did not introduce its bars into the marketplace until after Nestlé's CRUNCH Trademarks and Trade Dress had achieved an extremely high degree of recognition across the United States.  Pervine's use of highly similar trademarks and trade dress, and its apparent intention to create an association between itself and Nestlé's CRUNCH Trademarks and Trade Dress and the goodwill symbolized thereby, creates a strong likelihood that Pervine's conduct is causing actual association between Pervine's FIT CRUNCH bars and Nestlé's CRUNCH bars.

42.     As a direct and proximate result of Pervine's unauthorized conduct, Nestlé has been substantially damaged by confusion among consumers as to Nestlé's association or connection with, or endorsement or authorization of, Pervine and Pervine's products, and the dilution of Nestlé's famous CRUNCH Trademarks and Trade Dress.

43.     As a result of Pervine's misappropriation of Nestlé's CRUNCH Trademarks and Trade Dress, Pervine has caused, and will continue to cause, irreparable injury to Nestlé and has substantially damaged the value of Nestlé's CRUNCH Trademark and Trade Dress.

44.     In addition, Pervine has unjustly enriched itself at Nestlé's expense by advertising and selling products that appropriate and exploit Nestlé's goodwill and reputation.  Among the benefits that Pervine has gained from this conduct are increased revenues from the sale of its products bearing the Infringing Marks and Trade Dress.

COMPLAINT AND DEMAND FOR JURY TRIAL

**COUNT 1**
**(Trademark and Trade Dress Infringement, False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a))**

45.     Nestlé repeats and realleges paragraphs 1 – 44 as if fully set forth herein.

46.     Société des Produits Nestlé S.A. owns the registered NESTLÉ CRUNCH Trademarks and plaintiff Nestlé USA, Inc. is the exclusive licensee of the NESTLÉ CRUNCH Trademarks in the United States.

47.     The registered NESTLÉ CRUNCH Trademarks are valid and subsisting.

48.     As alleged above, the NESTLÉ CRUNCH Trademarks and key elements of the NESTLÉ CRUNCH Trade Dress are inherently distinctive and have also become famous and acquired secondary meaning.

49.     The NESTLÉ CRUNCH Trademarks and Trade Dress were distinctive long before Pervine began using the Infringing Marks and Trade Dress.

50.     The NESTLÉ CRUNCH Trademarks and key elements of the NESTLÉ CRUNCH Trade Dress are non-functional.

51.     Pervine's unauthorized use in commerce of the Infringing Marks and Trade Dress is likely to cause consumer confusion or mistake or to deceive consumers into believing that Pervine's products are sponsored by, endorsed by, or originate from Nestlé or are otherwise connected or affiliated with, or approved by Nestlé, and constitutes:  (i) trademark infringement; (ii) trade dress infringement; (iii) false designation of origin; and/or (iv) unfair competition.

52.     Upon information and belief, Pervine's conduct is malicious, intentional and willful.

53.     Pervine's conduct has caused, and unless enjoined, will continue to cause, irreparable harm and injury to Nestlé's business reputation and goodwill as well as inevitable public confusion and substantial and irreparable harm to the

public.

54.     Pervine's conduct has substantially damaged the value of the NESTLÉ CRUNCH Trademarks and Trade Dress and causes Nestlé to suffer damages in an unascertainable amount.

55.     By reason of the foregoing, Nestlé is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

56.     Pursuant to 15 U.S.C. § 1117, Nestlé is also entitled to recover damages in an amount including, but not limited to, profits made by Pervine on the sale of its products using the Infringing Marks and Trade Dress, and the costs of this action.

57.     Nestlé is further entitled to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, since Pervine's actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

## COUNT II
### (Trademark Infringement under 15 U.S.C. § 1114(1))

58.     Nestlé repeats and realleges paragraphs 1 – 57 as if fully set forth herein.

59.     Société des Produits Nestlé S.A. owns the registered NESTLÉ CRUNCH Trademarks and plaintiff Nestlé USA, Inc. is the exclusive licensee of the NESTLÉ CRUNCH Trademarks in the United States.

60.     The registered NESTLÉ CRUNCH Trademarks are valid and subsisting.

61.     As alleged above, the NESTLÉ CRUNCH Trademarks are inherently distinctive and have also become famous and acquired secondary meaning.

62.     The NESTLÉ CRUNCH Trademarks and Trade Dress were

COMPLAINT AND DEMAND FOR JURY TRIAL

distinctive long before Pervine began using the Infringing Marks and Trade Dress.

63.     The NESTLÉ CRUNCH Trademarks are non-functional.

64.     Pervine's use of the Infringing Marks in interstate commerce to advertise, promote, market and sell its baking chips constitutes infringement of Nestlé's NESTLÉ CRUNCH Trademarks.

65.     Pervine's conduct constitutes the unauthorized use in commerce in the United States of the registered NESTLÉ CRUNCH Trademarks in connection with the sale, offering for sale, distribution, or advertising of its products.  Pervine's unauthorized use of the Infringing Marks is likely to cause confusion, mistake and deception of the public as to the affiliation, connection, and/or association between Nestlé and Pervine; the origin of the Pervine nutrition bars containing chocolate; and/or the sponsorship, endorsement, or approval of the Pervine products by Nestlé, in each case a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

66.     Upon information and belief, Pervine has undertaken these actions maliciously, willfully and with the devious intent to cause confusion, mistake and deception on the part of the public.

67.     Pervine's actions have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Nestlé's business reputation and goodwill as well as public confusion and substantial and irreparable harm to the public for which there is no adequate remedy at law.

68.     Pervine's conduct has substantially damaged the value of the NESTLÉ CRUNCH  Trademarks and Trade Dress and causes Nestlé to suffer damages in an unascertainable amount.

69.     By reason of the foregoing, Nestlé is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

70.     Pursuant to 15 U.S.C. § 1117, Nestlé is also entitled to recover damages in an amount including, but not limited to, profits made by Pervine on the sale of its products using the Infringing Marks, and the costs of this action.

71.     Nestlé is further entitled to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, since Pervine's actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

<u>**COUNT III**</u>
**(Dilution under 15 U.S.C. § 1125(c))**

72.     Nestlé repeats and realleges paragraphs 1 – 71 as if fully set forth herein.

73.     Société des Produits Nestlé S.A. owns the registered NESTLÉ CRUNCH Trademarks and plaintiff Nestlé USA, Inc. is the exclusive licensee of the NESTLÉ CRUNCH Trademarks in the United States.

74.     The registered NESTLÉ CRUNCH Trademarks are valid and subsisting.

75.     As alleged above, the NESTLÉ CRUNCH Trademarks and key elements of the NESTLÉ CRUNCH Trade Dress are inherently distinctive and have also become famous and acquired secondary meaning.

76.     The NESTLÉ CRUNCH Trademarks and Trade Dress were distinctive long before Pervine began using the Infringing Marks and Trade Dress.

77.     The NESTLÉ CRUNCH Trademarks and key elements of the NESTLÉ CRUNCH Trade Dress are non-functional.

78.     The NESTLÉ CRUNCH Trademarks and Trade Dress are famous and widely recognized by the general consuming public of the United States as a source designation for Nestlé's goods.  Among other things:  (i) the NESTLÉ

CRUNCH Trademarks and Trade Dress are inherently distinctive and have also acquired a high degree of distinctiveness; (ii) the NESTLÉ CRUNCH Trademarks and Trade Dress have been used for more than half a century throughout the United States; (iii) Nestlé has spent many millions of dollars advertising and publicizing the NESTLÉ CRUNCH Trademarks and Trade Dress in the United States; (iv) Nestlé has used the NESTLÉ CRUNCH Trademarks and Trade Dress throughout the United States; (v) the NESTLÉ CRUNCH Trademarks and Trade Dress are among the preeminent marks in the food industry, especially with regard to chocolate bars and related products; (vi) the NESTLÉ CRUNCH Trademarks and Trade Dress have an extremely high degree of recognition among the general consuming public of the United States; and (vii) Nestlé has sold hundreds of millions of chocolate bars featuring the NESTLÉ CRUNCH Trademarks and Trade Dress.

79. Pervine began selling its bars bearing the Infringing Marks and Trade Dress after the NESTLÉ CRUNCH Trademarks and Trade Dress had already achieved an extremely high degree of recognition among American consumers. Indeed, it appears that the Infringing Marks and Trade Dress were modeled directly after the NESTLÉ CRUNCH Trademarks and Trade Dress.

80. Pervine's conduct, described above, blurs and impairs the distinctiveness of the famous NESTLÉ CRUNCH Trademarks and Trade Dress because: (i) Pervine uses highly similar trademarks and trade dress to promote its products; and (ii) it appears that Pervine intended to create an association between itself and the NESTLÉ CRUNCH Trademarks and Trade Dress and the goodwill symbolized thereby. Pervine's use of the Infringing Marks and Trade Dress for the advertisement and sale of the Pervine products is likely to cause actual association between Pervine's goods and the NESTLÉ CRUNCH brand, as consumers are apt to think that Pervine's FIT CRUNCH product is a low

calorie or healthier version of Nestlé's iconic CRUNCH bar.

81. Pervine's conduct is likely to, and does in fact, cause damage to Nestlé and to the substantial goodwill symbolized by the NESTLÉ CRUNCH Trademarks and Trade Dress, in violation of 15 U.S.C. § 1125(c).

82. Upon information and belief, Pervine intended to cause dilution of Nestlé's distinctive NESTLÉ CRUNCH Trademarks and Trade Dress, and Pervine's actions were in conscious disregard of Nestlé's rights.

83. Pervine's actions have caused, and unless enjoined, will continue to cause irreparable harm and injury to Nestlé's business reputation and goodwill as well as public confusion and substantial and irreparable harm to the public for which there is no adequate remedy at law.

84. Pervine's conduct has substantially damaged the value of the NESTLÉ CRUNCH  Trademarks and Trade Dress and causes Nestlé to suffer damages in an unascertainable amount.

85. By reason of the foregoing, Nestlé is entitled to injunctive relief against Pervine, restraining further acts of dilution.

86. Pursuant to 15 U.S.C. § 1117, Nestlé is entitled to recover actual damages, treble damages, Pervine's profits, the costs of the action, and attorneys' fees.

**COUNT IV**
**(Common Law Trademark Infringement)**

87. Nestlé repeats and realleges paragraphs 1 – 86 as if fully set forth herein.

88. Nestlé owns and enjoys common law trademark rights throughout the United States in its CRUNCH Trademark and Trade Dress in connection with the advertising, sale and distribution of its chocolate products.

89. Pervine's use in commerce of the term CRUNCH and the

confusingly similar trade dress in connection with the advertising, marketing, sale, and distribution of its nutrition bars containing chocolate is likely to cause confusion, and/or to cause mistake or to deceive the consuming public.

90.  By these wrongful acts, Pervine has caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury and damage to Nestlé and to the goodwill, reputation, and business success associated with Nestlé's name and its CRUNCH Trademark and Trade Dress throughout the United States.

91.  Upon information and belief, Pervine has profited or will profit by its wrongful conduct and activities.

92.  Nestlé has no adequate remedy at law for Pervine's common law trademark infringement.

93.  Pervine's acts of trademark infringement have further caused Nestlé to sustain monetary damages, loss and injury, including lost sales and injury to reputation and business goodwill, in an amount to be determined at the trial in this action.

**COUNT V**
**(Unfair Competition Under California Business and Professions Code § 17200 et seq.)**

94.  Nestlé repeats and realleges paragraphs 1 – 93 as if fully set forth herein.

95.  Pervine's use of the term CRUNCH in connection with the advertising, marketing, sale and distribution of its nutrition bars containing chocolate infringes the NESTLÉ CRUNCH Trademarks and Trade Dress, in violation of Lanham Act §32, 15 U.S.C. § 1114.  Pervine's use of the term CRUNCH constitutes a false designation of origin and unfair competition, in violation of Lanham Act §43(a), 15 U.S.C. § 1125(a), and is likely to cause confusion, or to cause mistake or to deceive the consuming public as to the

affiliation, connection, or association of Pervine's products with Nestlé's products.

96.     In addition to being unlawful, Pervine's use of the term CRUNCH in connection with the advertising, marketing, sale and distribution in interstate commerce of its products constitutes unfair competition in that it is likely to cause confusion to consumers.  The general consuming public, who are familiar with Nestlé's iconic CRUNCH brand, are likely to assume that Pervine's products advertised, marketed, sold and distributed under the term CRUNCH are related to, or from the same source as, Nestlé's products.  This will injure Nestlé's business reputation and impair its goodwill and ability to build its business and market and sell its products.  Consumers' purchasing decisions will be influenced by this confusion.

97.     Pervine's unlawful and unfair actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200.

98.     Upon information and belief, Pervine has profited or will profit by its wrongful conduct and activities.

99.     Nestlé has no adequate remedy at law for Pervine's unfair competition.

100.   Pursuant to California Business and Professions Code § 17203, Nestlé is entitled to preliminary and permanent injunctive relief ordering Pervine to cease this unfair competition, as well as disgorgement of Pervine's profits associated with this unfair competition.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Nestlé prays that this Court enter judgment in its favor and against Pervine as follows:

A.     Preliminarily and permanently enjoining Pervine, its officers,

agents, servants, employees, subsidiaries, parents, affiliates, related entities, suppliers, customers, successors, assigns and attorneys, and those acting in concert with, by or through them, from:

(i)     selling, displaying, and/or advertising Pervine's nutrition bars in infringing packaging;

(ii)    using in any manner any logo, mark, or trade dress that contains any of Nestlé's trademarks, trade dress, and/or any similar variation thereof, alone or together;

(iii)   in any way seeking to, directly or indirectly, misappropriate the goodwill and reputation associated with the Nestlé's Trademarks or Trade Dress;

(iv)    in any way inducing, directly or indirectly, the belief that Pervine's products have been or are in any way connected to or associated with or approved or endorsed by Nestlé.

B.      Directing Pervine, pursuant to 15 U.S.C. § 1116(a) or otherwise, to file with this Court and serve on Nestlé within (30) days of entry of any injunction, or such other time as directed by the Court, a report in writing and under oath setting forth in detail the manner and form in which Pervine has complied with the injunction.

C.      Ordering the recall and destruction of any marketing materials, advertisements, receptacles, displays and products of Pervine, the manufacture or sale of which is enjoined pursuant to any injunction ordered by the Court, or that violate 15 U.S.C. § 1125(a).

D.      Ordering Pervine to pay Nestlé:

(i)     An accounting and disgorgement of all of Pervine's profits resulting from infringement and profits and gains of any kind resulting from Pervine's willful violations, and three times the

1    amount thereof pursuant to 15 U.S.C. § 1117(a).

2    (ii)    Nestlé's reasonable attorneys' fees, disbursements, costs and

3    expenses in connection with this action, pursuant to 15 U.S.C. §

4    1117(a) and California law.

5    (iii)    Punitive damages.

6    E.    Awarding Nestlé such other and further relief as this Court deems

7    just and proper.

## DEMAND FOR JURY TRIAL

8    In accordance with Rule 38(b) of the Federal Rules of Civil Procedure,

9    Nestlé hereby demands a trial by jury with respect to all issues and claims,

10   asserted by any party, triable of right by a jury, in the above-captioned action.

11

12   Dated:  August 26, 2015

13                                   MAYER BROWN LLP

14

15   By:  */s/ Dale J. Giali*
     Dale J. Giali (Bar No. 150382)
16   350 South Grand Ave., 25th Floor
     Los Angeles, California  90071
     Tel:  (213) 229-9500
17   Fax:  (213) 625-0248
     Email: dgiali@mayerbrown.com
18
     A. John P. Mancini*
19   1221 Avenue of the Americas
     New York, NY  10020
20   Tel: (212) 506-2295
     Fax: (212) 849-5895
21   Email: jmancini@mayerbrown.com
     *Pro hac vice to be filed
22
     **Attorneys for Plaintiff**
23   **Nestlé USA, Inc.**

24

25

26

27

28

20

COMPLAINT AND DEMAND FOR JURY TRIAL