**TRESSLER LLP**
Michaela L. Sozio, Esq.   SBN 179148
msozio@tresslerllp.com
Jeanne Kuo Riggins, Esq., SBN 231441
jriggins@tresslerllp.com
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Tel: (310) 203-4800
Fax: (310) 203-4850

Attorneys for Defendant
PERVINE FOODS, LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NESTLÉ USA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PERVINE FOODS, LLC,<br><br>Defendant. | CASE NO. 2:15cv06527-CAS-AFM<br><br>Hon. Christina A. Snyder<br><br>**MEMORANDUM IN SUPPORT OF MOTION OF PERVINE FOODS, LLC TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)** |

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ................................................................................................1
II. ARGUMENT.....................................................................................................2
    A. The Western District of Pennsylvania is an Appropriate Forum .........2
    B. The Interests of Convenience and Justice are Served by Transfer.......3
        1. Plaintiff's Choice of Forum........................................................3
        2. Convenience of the Parties .........................................................6
        3. Convenience of Witnesses..........................................................7
        4. Ease of Access to Evidence......................................................10
    C. Interests of Justice................................................................................11
III. CONCLUSION ...............................................................................................12

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*A.J. Industries v. U.S. District Court*,
  503 F.2d 384 (9th Cir. 1974) ............................................................................... 7

*AEC One Stop Group, Inc. v. CD Listening Bar*,
  326 F.Supp.2d 525 (S.D.N.Y. 2004) ................................................................... 4

*Amazon.com v. Cendant Corp.*,
  404 F.Supp.2d 1256 (W.D. Wash. 2005) ............................................................ 5

*Arete Power, Inc. v. Beacon Power Corp.*,
  2008 WL 508477 (N.D. Cal. Feb. 22, 2008) ....................................................... 5

*B & B Hardware, Inc. v. Hargis Industries, Inc.*,
  2006 WL 4568798 (C.D. Cal. Nov. 30, 2006) ...................................... 3, 4, 5, 10

*Bionx Implants, Inc. v. Biomet, Inc.*,
  1999 WL 342306 (S.D.N.Y. May 27, 1999) ....................................................... 9

*Black and Decker Corp. v. Vermont American Corp*,
  915 F.Supp. 933 (N.D. Ill. 1995) ....................................................................... 10

*Cambridge Filter Corp. v. International Filter Co., Inc.*,
  548 F.Supp. 1308 (D. Nev. 1982) ....................................................................... 9

*Cartier v. D & D Jewelry Imports*,
  510 F.Supp. 344 (S.D.N.Y. 2007) .................................................................... 5, 6

*Data Retrieval Technology, LLC v. Sybase, Inc.*,
  2009 WL 960681(W.D. Wash. Apr. 8, 2009) ..................................................... 5

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ............................................................................... 3

*E & J Gallo Winery v. F. & P. SPA*,
  899 F.Supp.465 (E.D. Cal. 1994) ........................................................................ 3

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) ............................................................................. 7

*GPNE Corp. v. Amazon.com*,
  2012 WL 1656923 (D. Hawaii 2012) .................................................................. 5

*Gulf Oil v. Gilbert*,
  330 U.S. 501 (1947) ............................................................................................ 9

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................ 10

*In re Link A Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011) ........................................................................ 10

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .............................................................................. 2

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .............................................................................. 3

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995.) ................................................................................ 6

*Metz v. U.S. Life Ins. Co. in City of New York*,
  674 F.Supp.2d 1141 (S.D. Cal. 2009) ........................................................ 3, 5, 7

*Pacific Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) .............................................................................. 4

*S.C. Johnson & Son, Inc. v. Gillette Co.*,
  571 F.Supp. 1185 (N.D. Ill. 1983.) .................................................................. 4, 5

*Saint-Gobain Calmar, Inc. v. Nat'l. Prods. Corp.*,
  230 F.Supp.2d 655 (E.D. Pa. 2002) .................................................................. 4

*Tensor Group, Inc. v. All Press Parts & Equipment, Inc.*,
  966 F.Supp. 727 (N.D. Ill. 1997) ........................................................................ 6

**STATUTES**

28 U.S.C. 28 U.S.C. §1391(b)(2) ............................................................................ 3

28 U.S.C. § 1404(a) ........................................................................................ 1,2,3

iv
MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO U.S.C. § 1404(a)

# MEMORANDUM OF POINTS OF AUTHORITIES

Pervine Foods, LLC (Pervine), submits its Memorandum in Support of its Motion to Transfer Venue of this action to the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. §1404(a).

## I. BACKGROUND

The gist of the Complaint is Nestlé's contention that Pervine is infringing certain trademarks and alleged trade dress through the nationwide sale of its high-protein FIT CRUNCH® brand bars. Nestlé USA, Inc. ("Nestlé") asserts claims for trademark and trade dress infringement, dilution and unfair competition. The only connection to California and this District is that Nestlé's principal place of business is in Glendale, California. (Complaint at ¶6).

Pervine is a Pennsylvania limited liability company based in Pittsburgh, Pennsylvania. (Declaration of Michaela L. Sozio ("Sozio Decl.") at ¶8, Ex. 1 (Perich Declaration ("Perich Decl.") at ¶2)). It sells the award-winning FIT CRUNCH® baked nutrition bars, created by co-founder and celebrity Chef Robert Irvine to provide quality nutrition and an unmatched taste. FIT CRUNCH® makes getting your protein more enjoyable, is sold worldwide and enjoyed by health conscious consumers of all walks of life. The FIT CRUNCH® mark was awarded two federal trademark registrations (Reg. Nos. 4,501,292 and 4,501,294) for high-protein nutritional supplements formed and packaged as bars. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶3)). The FIT CRUNCH® mark and trade dress were the result of brainstorming sessions which took place in Pittsburgh. The impetus was to create a product facilitating a healthy fit lifestyle (protein-fortified weight training, etc.), not a knock-off of any Nestlé product, *e.g.* the trademark FortiFX, which appears on all FIT CRUNCH® nutrition bars, stands for "Fortified Nutrition". (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶8, 14)).

As Nestlé admits, the NESTLE'S CRUNCH federal trademark registration is owned by a Swiss corporation, Societe des produits Nestlé S.A. ("Societe") (Cmpl.

at ¶ 6 and Ex. A-1 thereto). Nestlé, a Delaware corporation, is the exclusive licensee for Societe in the United States, both huge multinational corporations. (Cmpl. at ¶ 6). In contrast, Pervine is a small Pennsylvania limited liability company located in Pittsburgh, Pennsylvania, with 7 employees. Non-party Bakery Barn, Inc., the company that manufactures and ships the FIT CRUNCH® products, is a small Pennsylvania corporation also headquartered in Pittsburgh. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶2, 5-7)). Key witnesses regarding creation and design of the FIT CRUNCH® trademark and packaging and development of the website fitcrunchbars.com are located in Pittsburgh, as are witnesses regarding marketing and sales, as well as in New Jersey. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶ 4, 9-11)). Non-party Chef Robert Irvine, who plays a critical role in promoting and marketing the FIT CRUNCH® brand, including use of his name and likeness, maintains a business office in Philadelphia, Pennsylvania. (Sozio Decl. at ¶9, Ex. 2 (Irvine Decl. at ¶ 2-4)). One of Pervine's primary customers, GNC Holdings, Inc., is headquartered in Pittsburgh. (Sozio Decl. at ¶8, Ex. 1 ((Perich Decl. at ¶17)).

The only connection to this District is that Nestlé is located here. However, Nestlé is simply the licensee of the owner of the intellectual property at issue, Societe. For these reasons, this Court should transfer this action to the Western District of Pennsylvania.

## II. ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), a court may transfer an action to any other district where it might have been brought for the convenience of parties and witnesses and in the interest of justice.

### A. The Western District of Pennsylvania is an Appropriate Forum

A threshold issue is whether a plaintiff's claims could have been filed in the judicial district to which transfer is sought. A forum is "adequate" if the parties will not be deprived of all remedies or treated unfairly. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). This is a trademark infringement action brought under the

Lanham Act so any federal court has subject matter jurisdiction. *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 2006 WL 4568798, *3 (C.D. Cal. Nov. 30, 2006). Nestlé sells its products nationwide and the Complaint alleges nationwide infringement. Thus, Nestlé could have sought the same relief in any U.S. district court, including the Western District of Pennsylvania. Venue is appropriate in the Western District because a substantial part of the events giving rise to the claim occurred there. 28 U.S.C. §1391(b)(2). Further, Pervine resides in said district and Nestlé does business there.

### B. The Interests of Convenience and Justice are Served by Transfer

In determining whether the convenience and interests of justice elements of § 1404(a) are met by the proposed transfer, courts consider (1) convenience to the parties and witnesses; (2) relative ease of access to evidence; (3) availability of compulsory process for attendance of unwilling witnesses; (4) plaintiff's choice of forum; and (5) administrative considerations. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Ninth Circuit has directed that §1404(a) criteria require an "individualized case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The court is to interpret these factors broadly and apply them to the particular facts of each case. *E & J Gallo Winery v. F. & P. SPA*, 899 F.Supp.465, 466 (E.D. Cal. 1994).

Deference to plaintiff's choice of venue is diminished if the moving party establishes one or more of the following factors: (1) the operative facts have not occurred within the forum; (2) the forum has no particular interest in the parties or subject matter; (3) the forum is not the primary residence of either party; or (4) the subject matter of the litigation is not substantially connected to the forum. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F.Supp.2d 1141, 1146 (S.D. Cal. 2009).

### 1. Plaintiff's Choice of Forum

While there is a presumption in favor of honoring plaintiff's choice of forum,

this presumption is considerably lessened when the forum lacks any significant contact with the activities alleged in the Complaint. As the Ninth Circuit explained:

> Plaintiff's choice of forum…is not the final word. In judging the weight to be given such a choice, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the **operative facts** have not occurred within the forum of original selection…the plaintiff's choice is entitled only to minimal consideration.

*Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). (*emphasis added*).

In *B&B Hardware, Inc.*, this Court explained that a plaintiff's residence is never dispositive on the issue of venue and that the plaintiff alleged no conduct occurring uniquely in California. It held that in a trademark infringement action, the most appropriate forum is typically where the activities of the alleged infringer occurred.

> This is because "the operative facts in infringement cases usually relate to the design, development and production of an infringing product." *AEC One Stop Group, Inc. v. CD Listening Bar*, 326 F.Supp.2d 525, 520 (S.D.N.Y. 2004) (copyright case); *See also Saint-Gobain Calmar, Inc. v. Nat'l. Prods. Corp.,* 230 F.Supp.2d 655 (E.D. Pa. 2002) (The 'center of gravity' for an infringement claim is in the district where the alleged infringement occurred. In finding that 'center of gravity', the district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production.) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1187-88 (N.D. Ill. 1983.))

2006 WL 4568798, *3. In *B&B Hardware*, this Court granted the motion to transfer venue even though plaintiff was located in the Central District of California in part because the **operative facts** in the trademark infringement dispute occurred in the district where defendant did business and where the activities surrounding the

alleged infringement occurred. *See also Metz*, 674 F.Supp.2d at 1145 (holding that the majority of defendant's operations pertaining to the policy dispute occurred in the New York area, where defendant is based.)

The same rationale was adopted in *Cartier v. D & D Jewelry Imports*, 510 F.Supp. 344 (S.D.N.Y. 2007), involving claims of trademark, copyright and trade dress infringement. Plaintiff *Cartier* is a Delaware corporation with executive offices in New York, where it filed suit. Nevertheless, the court found that the locus of operative facts weighed strongly in favor of transfer to the Northern District of California because the subject of the litigation, defendants' alleging infringing activities, occurred largely in California. Defendant was located in California, its website was operated out of California and the allegedly infringing items were shipped from California. In the instant case, the events giving rise to Nestlé's claims occurred primarily in Pittsburgh, where the trademark and packaging was designed and developed, the product is manufactured and shipped and decisions regarding marketing and sales are made. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶1-19)). *B&B Hardware*, *supra*.

Both *Amazon.com v. Cendant Corp.*, 404 F.Supp.2d 1256, 1260 (W.D. Wash. 2005) and *GPNE Corp. v. Amazon.com,* 2012 WL 1656923, *5-6 (D. Hawaii 2012) emphasized that even if plaintiff is a resident of the chosen forum, less deference is accorded when the action has little connection to that forum. In *Amazon.com*, the alleged infringement occurred on defendant's websites, which were designed and maintained at defendants' business headquarters, the center of gravity based on this hub of activity, citing *S.C. Johnson & Son, Inc.,* 571 F.Supp.at 1188. The *GPNE Corp*. decision explained that courts look not to where the allegedly infringing product was sold but where it was designed, developed and tested, as well as where sales and marketing decisions were made, citing *Data Retrieval Technology, LLC v. Sybase, Inc.*, 2009 WL 960681, *3 (W.D. Wash. Apr. 8, 2009) and *Arete Power, Inc. v. Beacon Power Corp.*, 2008 WL 508477, *5 (N.D. Cal. Feb. 22, 2008).

In the instant case, the allegedly infringing trademark, packaging and products were all created, designed and developed in Pittsburgh, as were decisions regarding marketing, creation of the websites and sales of the FIT CRUNCH® nutritional bars.  The FIT CRUNCH® product was also manufactured in and shipped from Bakery Barn, Inc., in Pittsburgh.  (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶5-7, 16)).  This District has no particular connection with Pervine's sale of its FIT CRUNCH® products.  Put another way, its connection is the same as any other district court since the products are sold throughout the United States and not particularly targeted to this District.  In addition, the owner of plaintiff's trademark is a Swiss corporation.  Plaintiff is only its licensee.  Thus, this factor strongly weighs in favor of transfer to the Western District of Pennsylvania.

### 2.  Convenience of the Parties

The convenience of the parties strongly favors transfer to the Western District of Pennsylvania, given their respective size and resources. Where a disparity between the parties exists, the court may consider the relative means of the parties in determining whether to transfer venue.  In *Tensor Group, Inc. v. All Press Parts & Equipment, Inc*., 966 F.Supp. 727, 728-29 (N.D. Ill. 1997), the court concluded that convenience of the parties weighed in favor of transferring a copyright infringement action from the Northern District of Illinois to the Eastern District of Wisconsin because the plaintiff copyright holder was a large corporation that would not be burdened by litigating in Wisconsin, while the alleged infringer was a one-man operation that would be greatly burdened if forced to litigate in Illinois.  The same result was reached in *Cartier*, in which the court held that Cartier could better afford to put on its case in California than defendants could afford to defend their case in New York.  *Cartier*, 510 F.Supp.2d at 347. When analyzing a motion to transfer, courts may consider the parties relative ability to afford the expenses of litigating in that forum.  *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (3d Cir. 1995.)

Pervine is a small company with seven employees and a small executive staff of three people. Its business activities and employees are centered in Pennsylvania. Both Pervine and non-party Bakery Barn, Inc., the company that manufactures and ships its high-protein nutritional bars, are based in Pittsburgh. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶2, 4-11)). Requiring Pervine to litigate this matter in California would result in a significant financial burden and disruption of its operations, especially since it has only seven employees and a very small executive staff. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶4, 18)). Nestlé by its own admission is a multinational conglomerate with more than 51,000 employees nationwide, $9.7 billion in sales in 2014, 25 manufacturing facilities, 43 distribution centers and 13 sales offices across the country. (Sozio Decl. at ¶10, Ex. 3). As such, plaintiff can well afford to litigate in Pennsylvania.

### 3. Convenience of Witnesses

This Court has said repeatedly that the most important factor in determining whether venue transfer is appropriate is the convenience of the witnesses. *A.J. Industries v. U.S. District Court*, 503 F.2d 384, 386-87 (9th Cir. 1974); *Metz,* 674 F.Supp.2d at 1147. In analyzing this factor, the Court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-26 (9th Cir. 1984).

The issues relevant to Nestlé's trademark and trade dress infringement claims include creation and design of the FIT CRUNCH® trademark, Pervine's federal trademark registrations and its packaging, Pervine's intent in selecting its trademark and packaging, the type of products Pervine sells and how and where it markets those products. The individuals most knowledgeable about the creation of the FIT CRUNCH® trademark and creation and design of packaging for the FIT CRUNCH® nutritional protein bars are Sean Perich, President of Pervine, who is also President of Bakery Barn, Inc., the company that manufactures the products, Dave Plowden, a Pervine employee who works on marketing, graphic design, and

the fitcrunchbars.com website, Matt Cruny, the Chief Financial Officer for Pervine and Bakery Barn and Jim Perich. Jim Perich is a Member of Perich Investments LLC, one of the owners of Pervine, along with Sean Perich and Matt Cruny. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl., ¶¶1, 8-13)). The same individuals can testify regarding Pervine's intent in selecting its trademark and packaging, the type of products it sells and how it markets them. Sean and Jim Perich, Dave Plowden and Matt Cruny all reside in Pittsburgh, Pennsylvania, which is also the headquarters for Pervine, non-party Bakery Barn, Inc. and Perich Investments LLC. Most, if not all, documents relating to the creation, design, development and marketing of the FIT CRUNCH® trademark and products are located at Pervine's office in Pittsburgh. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl., at ¶¶2, 4, 8-11)).

     Pervine has only seven employees. This includes a small marketing/sales team consisting of Marissa Pittius, Lisa Zamparelli and John Kizer, along with Vice President Mike Spinosa, who heads the team. Spinosa and this team work out of an office in Manasquan, New Jersey and all four reside in New Jersey. This team works closely with Pervine's Pittsburgh headquarters. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶4)). In addition to the FIT CRUNCH® trademark, all FIT CRUNCH® products display the trademark FortiFX®, which stands for fortified nutrition. Perich Investments LLC owns the federal trademark registration for FortiFX® and Jim Perich, one of its Members who resides in Pittsburgh, is most knowledgeable about this mark. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶¶9, 12-14)).

     Pervine is also owned by Irvine Nutritional, LLC and Chef Robert Irvine is its owner and Manager. (Sozio Decl. at ¶9, Ex. 2 (Irvine Decl. at ¶¶1-2)). Chef Robert Irvine is an essential component to the success of Pervine's FIT CRUNCH® brand. The FIT CRUNCH® products and packaging prominently display his name and likeness. While Mr. Irvine resides in Tampa, Florida, he maintains his business office in Philadelphia, which serves as the base for his marketing activities and

other services related to Pervine's business operations. (Sozio Decl. at ¶9, Ex. 2 (Irvine Decl. at ¶¶2-4)). Pervine's Board of Managers meetings are held at its headquarters in Pittsburgh and on occasion at Mr. Irvine's business office in Philadelphia. (Sozio Decl. at ¶8, 9, Ex. 1 (Perich Decl. at ¶16) and Ex. 2 (Irvine Decl. at ¶4)). Neither Pervine, Perich Investments, LLC, Bakery Barn, Inc., nor Irvine Nutritional, LLC, have offices or employees in California. (Sozio Decl. at ¶8, 9, Ex. 1 (Perich Decl. at ¶19) and Ex. 2 (Irvine Decl. at ¶5)).

One of Pervine's key customers is GNC Holdings, Inc., a leading specialty retailer of health and wellness products, including nutritional supplement and sports nutrition products. GNC is headquartered in Pittsburgh. It sells Pervine's FIT CRUNCH® high-protein nutrition bars in its specialty nutrition segment. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl. at ¶17)). The importance of GNC cannot be overstated since its reputation for selling reputable and effective nutritional products carries great weight with consumers. That GNC sells Pervine's FIT CRUNCH® products in its specialty nutrition segment enhances the FIT CRUNCH® brand as a sports nutrition product.

The availability of process to compel the testimony of important witnesses is an important consideration in motions to transfer. *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F.Supp. 1308, 1311 (D. Nev. 1982); *Bionx Implants, Inc. v. Biomet, Inc.*, 1999 WL 342306, *5 (S.D.N.Y. May 27, 1999). GNC representatives are non-parties and thus beyond the power of compulsory process, as is Chef Robert Irvine and non-party Bakery Barn, Inc. Pervine is entitled to a vigorous defense and this Court's inability to compel compulsory testimony of key witnesses compromises that right. As the Supreme Court noted in *Gulf Oil v. Gilbert*, 330 U.S. 501 (1947), "To fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants".

Thus, in addition to employees of Pervine, likely third party witnesses include representatives of its key customer GNC, as well as Chef Robert Irvine.

As to the issue of any alleged confusion, plaintiff presumably would be able to obtain non-party witnesses in Pennsylvania to testify. In *Black and Decker Corp. v. Vermont American Corp,* 915 F.Supp. 933, 938 (N.D. Ill. 1995), the court transferred the trademark infringement action from Illinois to Kentucky for the convenience of the parties and witnesses. While plaintiff argued that consumer confusion would be a key issue, the court noted that since plaintiff alleged nationwide infringement, it presumably could find witnesses within the subpoena power of the transferring district on this issue.

In the instant case, most of the key witnesses with knowledge of the creation and design of the trademark and packaging at issue, as well as marketing and sale of the high-protein nutritional bars, reside in Pennsylvania. Pervine's small marketing/sales team resides in New Jersey. Third party witnesses, such as GNC and Chef Robert Irvine, are not subject to this Court's subpoena power. Further, since the majority of witnesses are located in Pennsylvania, litigating there would significantly lower the overall costs associated with travel for the purpose of discovery and pre-trial proceedings, as well as trial, tipping this factor in favor of transfer to the Western District of Pennsylvania. The convenience for and cost of attendance of witnesses is likely the single most important factor in a transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

### 4. Ease of Access to Evidence

Most of the documentary and physical evidence in this matter is located in Pittsburgh. (Sozio Decl. at ¶8, Ex. 1 (Perich Decl., at ¶11)). While this factor is of less importance in our electronic age, the Federal Circuit has held that while advances in technology may alter the weight given to the location of documentary evidence, it is improper to ignore this factor entirely. *In re Link A Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). In *B&B Hardware,* this Court

concluded that this factor weighed in favor of transfer because the relevant evidence is derived from defendant's allegedly infringing business and marketing activities. 2006 WL 4568798, *6.

### C. Interests of Justice

Since no answer has been filed, it is the opportune time for a transfer of venue. As outlined above, most of the critical witnesses and proofs are located in the Pittsburgh area, with a few in New Jersey. Most significant, one of Pervine's key customers, GNC Holdings, Inc., which sells the FIT CRUNCH® nutrition bars in its specialty nutrition segment, is headquartered in Pittsburgh. Further, Chef Robert Irvine, an essential component of the FIT CRUNCH ® brand, works out of his Philadelphia office. (Sozio Decl. at ¶8, 9, Ex. 1 (Perich Decl. at ¶1-18) and Ex. 2 (Irvine Decl. at ¶1-4)).

Pervine is a very small company and forcing it to litigate this case in this District would impose an undue financial burden. Requiring key officers to travel to California would significantly disrupt its business operations since management is small and it has only a handful of employees. This is a David and Goliath scenario in which Nestlé and the Swiss company that owns the trademark have unlimited resources. Forcing Pervine to bear the significant burden of litigating in this District does not serve the interests of justice. Finally, the operative facts relating to the alleged infringement all center around Pittsburgh, Pennsylvania. For these reasons, the interests of justice weigh heavily in favor of a transfer of venue, especially because this District has minimal interest in this matter.

### III.   CONCLUSION

For the foregoing reasons, Pervine Foods, LLC respectfully requests that this Court transfer the instant lawsuit to the Western District of Pennsylvania because it will better serve the interests of justice and the convenience of the parties and witnesses.

Dated: January 25, 2016          TRESSLER LLP


                                 BY:/s/ - Michaela L. Sozio
                                     Michaela L. Sozio
                                     Jeanne Kuo Riggins
                                     One of the Attorneys for Defendant
                                     Pervine Foods, LLC

657346